UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re Application of<br><br>CHRISTINA WALLIS et al.,<br><br><br>Applicants. | Case No. 18-mc-80147-DMR<br><br>**ORDER GRANTING LEAVE TO CONDUCT DISCOVERY IN FOREIGN LITIGATION PURSUANT TO 28 U.S.C. § 1782**<br><br>Re: Dkt. No. 1 |

Applicants Christina Wallis, Raymond Stancer, Jonathan Stancer, Charles Stancer, Dr. Joseph Caplan, Derek Luth, Yahel Nov, Tom Pires, and Nella Pires (collectively, "Applicants") filed this application to conduct discovery in foreign proceedings pursuant to 28 U.S.C. § 1782. [Docket No. 1 (Appl.)]. Having considered the papers submitted and the relevant legal authorities, the court GRANTS the application.

## I. BACKGROUND

Applicants are individuals and plaintiffs in two lawsuits[1] pending in the Ontario Superior Court of Justice, in Canada ("Ontario Litigation"). Both actions arise out of "explicit defamatory content and comments anonymously published on various Internet websites," allegedly posted by the defendant in those actions, Nadire Atas ("Atas"). Appl. at 2.

In 2004, Applicant and attorney Raymond Stancer's law firm "was retained as counsel to represent the plaintiffs in a contested mortgage enforcement action" against Atas and thereafter obtained a judgment against her. [Docket No. 2 (Stancer Decl.) ¶¶ 5-6.] Applicant Tom Pires, a mortgage broker, was Stancer's client and a party to the enforcement action, and Applicant Nella Pires is his wife. [Docket No. 3 (T. Pires Decl.) ¶ 3; Docket No. 4 (N. Pires Decl.) ¶ 3.] After the 2004 proceedings, Atas refinanced the subject property and defaulted on the second mortgage as

---

[1] *Dale & Lessman LLP, et al. v. Nadire Atas* (Case No. CV-16-544153); *Dr. Joseph Caplan, et al. v. Nadire Atas* (Case No. CV-18-594948).

well, resulting in further proceedings against her in 2008. Appl. at 4; Stancer Decl. ¶ 6; Docket No. 6 (Wallis Decl.) ¶ 5. Applicant Christina Wallis represented the refinancing lender-plaintiff in those mortgage enforcement actions and obtained various judgments against Atas. Wallis Decl. ¶ 5.

Between 2004 and 2011, Atas "commenced dozens of frivolous lawsuits related to [the] mortgage transactions and related proceedings against lawyers who had acted for and against her, lenders, real estate agents and mortgage brokers, alleging various claims of fraud and incompetence." Docket No. 8 ("G. Caplan Decl.") ¶ 8; Wallis Decl. ¶ 6. Third-party attorney Gary Caplan[2] represented the insurer for the defendant-attorneys in those actions. G. Caplan Decl. ¶ 8. In November 2014, Wallis and G. Caplan commenced proceedings to have Atas declared a vexatious litigant, which the Ontario Superior Court granted in February 2017. *Id.* at ¶ 9; Wallis Decl. ¶ 7.

In approximately 2010, Atas allegedly "undertook a defamatory internet campaign against Raymond Stancer and his firm, . . . impugning their competence, character, and actions." G. Caplan Decl. Ex. 1 (Statement of Claim) ¶ 19; Stancer Decl. ¶ 7. Stancer and his firm commenced a defamation action against Atas, and the court in that proceeding issued two orders enjoining Atas from "making further postings respecting [that] firm." Stancer Decl. ¶ 8. In approximately September 2015 (about the same time as the vexatious litigant action commenced), "further anonymous defamatory postings on other websites began to appear," targeting both Stancer's firm and other law firms and lawyers who "had some connection with Atas during the ongoing mortgage enforcement proceedings." *Id.* at ¶ 9; Wallis Decl. at ¶ 8. The first of the two actions underlying the instant application ("2016 Defamation Action"[3]) was filed "[a]s a result of this second round of online defamatory material." Stancer Decl. at ¶ 10; Wallis Decl. at ¶ 9.

Although the internet postings underlying the 2016 Defamation Action were anonymous, Atas admitted that she authored those postings in a written affidavit. Stancer Decl. ¶ 11; Wallis Decl. ¶ 11. She has since allegedly "ratcheted up her online defamation campaign by additionally attacking the family members of [the attorney applicants]", including "several family members of Christina Wallis" (who are not Applicants here); Applicants Jonathan and Charles Stancer (Raymond Stancer's adult children); Applicant Dr. Joseph Caplan (Gary Caplan's brother); and

---

[2] "G. Caplan" will refer to Gary Caplan; "J. Caplan" will refer to his brother, Dr. Joseph Caplan.
[3] The plaintiffs in the 2016 Defamation include Stancer and Wallis.

2

Applicants Derek Luth and Yahel Nov (Gary Caplan's sons-in-law). Appl. at 7; Wallis Decl. ¶ 18; Stancer Decl. ¶ 15; G. Caplan Decl. ¶ 5. Atas has also allegedly targeted Tom Pires and Nella Pires. T. Pires Decl. ¶¶ 5-10; N. Pires Decl. ¶¶ 5-10. The latest round of defamatory conduct spurred the second case underlying this Application ("2018 Defamatory Action").[4]

All Applicants "have been the targets of explicit online postings and comments accusing each of them of various incidents of egregious professional and personal misconduct." Appl. at 7. The attorney-Applicants have been accused of incompetence, dishonesty, and fraud. Wallis Decl. ¶ 8; Stancer Decl. ¶ 7. Their family members have been accused of being child pornographers and pedophiles. Wallis Decl. ¶ 14; Stancer Decl. ¶ 17. Tom Pires has been described as a "fraudster and child pornographer" and Nella Pires has also been accused of fraud. T. Pires Decl. ¶ 7; N. Pires Decl. ¶ 7.

The internet posts in question have appeared on Wordpress, Pinterest, and Facebook. *See* Statement of Claim, Schedules A-C, E-G.[5] Stancer attests that he and his sons are the subjects of posts on Pinterest and Wordpress. Stancer Decl. ¶ 26; *see, e.g.*, Docket No. 7 (Lee Decl.) Exs. 10 (Pinterest post referring to Raymond Stancer as "Fraudulent Toronto Lawyer"), 8 (Wordpress post alleging Charles Stancer is a "pedophile luring au pairs"), 11 (Pinterest post referring to "Jon Stancer Pedophile"). Tom and Nella Pires testify that they are identified in posts on Wordpress. T. Pires Decl. ¶¶ 5-8; N. Pires Decl. ¶¶ 5-8; *see, e.g.*, Lee Decl. Exs. 13 (Wordpress post about "Tom Pires . . . facing child porn charges"), 14 (Wordpress post stating that Tom and Nella Pires helped mastermind a Ponzi scheme). J. Caplan attests that he is the subject of posts on Wordpress.com. Docket No. 5 (J. Caplan Decl.) ¶¶ 7-11; *see, e.g.*, Lee Decl. Ex. 7 (Wordpress post stating that "Cardiologist physician Dr. Joseph Caplan dredged the 'darkest recesses of the internet' for vile snaps of abused children"). He further testifies that he has been contacted on Facebook by a user named "Fayeth Cee'z", who sent him an image of himself with the words "Pedophile Dr. Joseph Caplan" super-imposed on it. J. Caplan Decl. ¶ 14, Ex. 2 (screenshot of the Facebook exchange).

---

[4] The plaintiffs in the 2018 Defamation Action are Dr. Joseph Caplan, Raymond Stancer, Jonathan Stancer, Charles Stancer, Derek Luth, and Yahel Nov. G. Caplan Decl. ¶ 5.

[5] The attachments to the Statement of Claim identify "the totality of the online postings that are that are the subject of this Application." G. Caplan Decl. ¶ 15. However, "select examples of the numerous defamatory postings concerning Applicants" are attached to the Declaration of Michael Jason Lee, filed concurrently with the Application.

3

Wallis testifies that she and her family members were identified in posts on Wordpress and Pinterest. Wallis Decl. ¶¶ 15-21; *see, e.g.*, Lee Decl. Exs. 4 (Wordpress post titled "Christina J. Wallis, a fraudster lawyer").

Applicants now seek leave to issue subpoenas to Wordpress, Pinterest, and Facebook to prove that the author of these posts was Atas. Applicants' proposed subpoenas seek documents "that identify the subscriber and/or IP Address login information for the WordPress, Pinterest, and Facebook user(s) responsible for the anonymous defamatory postings and messages targeted at Applicants." G. Caplan Decl. ¶ 14. Applicants' proposed subpoena to Wordpress seeks identifying information (including subscriber information and IP address) for the author(s) of numerous Wordpress blogs that have posted allegedly defamatory material about Applicants, examples of which are cited above. *See* Appl. Ex. 1. Similarly, Applicants' proposed subpoena to Pinterest seeks identifying information for the poster(s) of allegedly defamatory material about Applicants, examples of which are cited above. *See* Appl. Ex. 2. Finally, Applicants' proposed subpoena to Facebook seeks identifying information solely for the account allegedly owned by "Fayeth Cee'z", who contacted Caplan as detailed above. *See* Appl. Ex. 3.

## II.     LEGAL STANDARD

Applicants seek discovery pursuant to 28 U.S.C. § 1782, which states as follows:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court . . . . To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a). The purpose of section 1782 is "to provide federal-court assistance in the gathering of evidence for use in a foreign tribunal." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004); *see also Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004) (noting that section 1782 has the "twin aims" of "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts") (citation and quotations

omitted).

A district court is authorized to grant a section 1782 application where (1) the person from whom the discovery is sought resides or is found in the district of the district court to which the application is made, (2) the discovery is for use in a proceeding before a "foreign or international tribunal," and (3) the application is made by the foreign or international tribunal or "any interested person." 28 U.S.C. § 1782(a); *see also Intel*, 542 U.S. at 246-47; *In re Republic of Equador*, No. C-10-80255-CRB (EMC), 2010 WL 3702427, *2 (N.D. Cal. Sept. 15, 2010).

"However, simply because a court has the authority under § 1782 to grant an application does not mean that it is required to do so." *In re Republic of Equador*, 2010 WL 3702427, at *2 (citing *Intel*, 542 U.S. at 264). The Supreme Court has identified several discretionary factors that a court should take into consideration in ruling on a Section 1782 request: (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance"; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65.

### III. DISCUSSION

#### A. Authority to Issue Subpoena

The court has reviewed Applicants' request and determines that the statutory requirements of section 1782 have been satisfied.

First, all three proposed recipients reside or may be found in the Northern District of California. For the purposes of satisfying this requirement, a company "may be found" in its place of incorporation, its headquarters, or where it undertakes "systematic and continuous local activities." *In re Godfrey*, 526 F. Supp. 2d 417, 422 (S.D.N.Y. 2007). Automattic, Inc. is a Delaware corporation that owns Wordpress.com and has its principal place of business in San Francisco, CA. Lee Decl. ¶¶ 3-5, Ex. 1. Pinterest and Facebook are also Delaware corporations with their principal places of business in San Francisco, CA and Menlo Park, CA, respectively. Lee Decl. ¶¶ 6-11, Exs. 2-3. As all three companies engage in "systematic and continuous local activities" within the

5

Northern District of California, they are subject to section 1782 discovery orders from this Court.

Second, the requested discovery is for use in two Canadian defamation lawsuits, which are proceedings before a foreign tribunal. Relevancy in the context of a section 1782 application is "broadly construed and encompasses any material that bears on, or that reasonably leads to other matters that could bear on, any issue that is or may be in the case." *In re Veiga*, 746 F. Supp. 2d 8, 19 (D.D.C. 2010) (quoting *Alexander v. Fed. Bureau of Investigation*, 194 F.R.D. 316, 325 (D.D.C. 2000)). "When relevance is in doubt, the district court should be permissive." *Id.*; *see also Weber v. Finker*, 554 F.3d 1379, 1384-85 (11th Cir. 2009) ("Section 1782 does not require that every documented discovered be actually used in the foreign proceeding."). Here, Applicants want identifying information for person(s) who have posted anonymous and allegedly defamatory material about Applicants on the internet. The identity of such person(s) are central to their defamation claim against Atas. Applicants have adequately shown that the discovery they seek meets the liberal standard in section 1782.

Third and finally, the application is made by plaintiffs in those lawsuits, who qualify as "interested persons" by virtue of being parties in the foreign proceeding. *Lancaster Factoring Co. Ltd. v. Mangone*, 90 F.3d 38 (2d Cir. 1996) ("The legislative history to § 1782 makes plain that 'interested person' includes 'a party to the foreign . . . litigation'.") (quoting Senate Report at 8, 1964 U.S.C.C.A.N. at 3789); *Intel*, 542 U.S. 241, 256 ("No doubt litigants are included among, and may the most common example of, the "interested person[s]" who may invoke § 1782 . . . .").

As Applicants meet the three threshold requirements for section 1782 relief, the court turns to the question of whether the discretionary *Intel* factors weigh in favor of or against issuance of the subpoenas.

### B. Discretionary Factors

With respect to the first discretionary factor, the Supreme Court has stated:

> [W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.

*Intel*, 542 U.S. at 264 (internal quotations and citations omitted). Here, none of the three proposed recipients are participating in the litigation before the Ontario Superior Court of Justice. G. Caplan Decl. ¶ 17 ("Wordpress, Pinterest, and Facebook will not be made parties to the Ontario Litigation."). As "the discovery by the proposed subpoenas is currently outside the reach of the Ontario Courts," it may be unobtainable without a discovery order under section 1782. *See id.* The first factor weighs in favor of issuing the subpoenas.

The second discretionary factor examines "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance." *Intel*, 542 U.S. at 264-65. Here, the "nature and character of the proceedings involve Applicants' online defamation claims," and "the identity of the individual(s) responsible for the anonymous online postings and comments is critical [to those claims.]" Appl. ¶ 18; G. Caplan Decl. ¶ 18. "Consistent with the statute's modest prima facie elements and Congress's goal of providing equitable and efficacious discovery procedures, district courts should treat relevant discovery materials sought pursuant to § 1782 as discoverable unless the party opposing the application can demonstrate facts sufficient to justify the denial of the application." *In re Bayer AG*, 146 F.3d 188, 195 (3d Cir. 1998). Further, "[c]urrent Canadian statutes suggest receptivity by the Ontario courts to the evidence sought by Applicants. Canada maintains a similar procedural mechanism for U.S. litigants seeking to compel evidence located in Canada for use in a U.S. proceeding." G. Caplan Decl. ¶¶ 20-22. Applicants have provided adequate evidence that the discovery sought is relevant to the proceedings abroad and that Canadian courts will be receptive to that evidence. Therefore, this factor weighs in favor of granting Applicants' request.

The third discretionary factor considers whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264-65. There is no evidence that Applicants in the instant case are attempting to circumvent Canadian law or procedure. Applicants have brought causes of action for defamation and harassment based on the content of numerous internet postings that have been presented to the court. The postings accuse named persons of fraud, illicit sexual behavior, and

other crimes or egregious acts, and Applicants have submitted declarations from the named persons affirming that (1) they are the people identified in such postings and (2) the factual claims in those postings are false. The information sought appears relevant and central to proving those claims and there is no evidence of any barrier to seeking discovery directly from the proposed recipients other than lack of jurisdictional reach. This factor weighs in favor of issuing the proposed subpoenas.

Fourth and finally, a court may consider whether a request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. Applicants are seeking to issue three subpoenas, one each to Wordpress, Pinterest, and Facebook. Each subpoena seeks identifying information for the poster(s) of the specific content that is detailed in this application and supporting documentation. Statement of Claim, Schedules A-C, E-G; Stancer Decl. Ex 1; T. Pires Decl. Ex 1; J. Caplan Decl. Exs. 1-2; Wallis Decl. Ex. 2.; Lee Decl. Exs. 1-14. The subpoenas are narrowly tailored to obtain relevant information that is central to Applicants' claims, and therefore are not overly intrusive or burdensome.

These findings do not preclude any of the witnesses from contesting the subpoena. The Ninth Circuit has held that applications for subpoenas pursuant to section 1782 may be filed ex parte because "[t]he witnesses can . . . raise[ ] objections and exercise[] their due process rights by motions to quash the subpoenas." *In re Letters Rogatory from Tokyo Dist.*, 539 F.2d 1216, 1219 (9th Cir. 1976).

## IV. CONCLUSION

For the reasons described above, the court grants Applicants' ex parte application. Applicants may serve finalized versions of the subpoenas attached as Exhibits A-C to the Application, which must include a return date at least thirty (30) days after service to allow Atas, Wordpress, Pinterest, and/or Facebook to contest the subpoenas if they desire. The subpoenaed third parties shall have 30 calendar days after the service of the subpoena to contest it.

Applicants must serve a copy of this order on the witnesses at the same time as the subpoenas. **Applicants also must immediately serve a copy of this order and the subpoenas on Atas.**

**IT IS SO ORDERED.**

Dated: October 24, 2018

_____
Donna M. Ryu
Judge Donna M. Ryu
United States Magistrate Judge

